

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Adeyemi Adenrele* | *Mailing Address:* | *Office Location:* | DIRECT: 301-344-0872 |
| *Assistant United States Attorney* | *6500 Cherrywood Lane, Suite 200* | *6406 Ivy Lane, 8th Floor* | MAIN: 301-344-4433 |
| *Adeyemi.Adenrele@usdoj.gov* | *Greenbelt, MD 20770-1249* | *Greenbelt, MD 20770-1249* | FAX: 301-344-4516 |

May 12, 2026

**Via ECF**

The Honorable James K. Bredar
United States District Judge
U.S. District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

Re:  United States v. Gasper
     Criminal No. JKB-23-147

Dear Judge Bredar,

We write in advance of sentencing in the above matter, scheduled for July 8, 2026 at 11:00 a.m., to provide the Court with the government's position. Based on, among other things, Defendant Kara Gasper's lengthy criminal history, the quantity of the methamphetamine seized, and her continued criminal conduct post-indictment and post-guilty plea, the government plans to recommend that the Defendant serve 135 months of imprisonment.

**Factual Background[1]**

The Drug Enforcement Agency ("DEA"), Group 53, began investigating methamphetamine activities in the Baltimore metropolitan area in or around November 2021. Kara Gasper ("Gasper" or the "Defendant") was listed in several DEA cases regarding methamphetamine trafficking dating back to 2005. Between February and September 2022, agents conducted seven controlled buys with Gasper. During that time, confidential sources purchased 91.95 grams of methamphetamine, between 97% and 100% purity, from Gasper.

On October 5, 2022, DEA agents and other law enforcement officers executed search warrants on the Defendant's residence (2259 Cedley Street, Baltimore, MD 21230), her vehicle, and her person. During the execution of the warrants, the agents seized, among other items, multiple suspected controlled dangerous substances (CDS) that were later tested by the DEA Mid-Atlantic Laboratory. The laboratory determined that the seized suspected CDS included 27.25 grams of methamphetamine (92% purity), 2.23 grams of methamphetamine (96% purity), and 88.92 grams of methamphetamine (88% purity). Pursuant to the United States Sentencing Guidelines, 2D1.1(c), note B, the "actual" weights of the methamphetamine are 25.07 grams (actual), 2.14 grams (actual), and 78.24 grams (actual), respectively. The agents also seized 4.65 grams of fentanyl, a digital scale, and various drug paraphernalia.

---

[1] This Factual Background section is consistent with the Stipulation of Facts in the Plea Agreement in this case.

 

On April 26, 2023, a federal grand jury indicted the Defendant with possession with intent to distribute fifty grams or more of methamphetamine. *See* ECF No. 1. On August 6, 2025, the Defendant pleaded guilty to a superseding information charging her with one count of a possession with intent to distribute a non-quantity amount of methamphetamine. ECF Nos. 55, 60, 61. In the plea agreement, the Defendant stipulated and agreed that she knowingly, willfully, and unlawfully possessed the methamphetamine seized from her residence on October 5, 2022 and the amount of methamphetamine possessed was greater than 50 grams of methamphetamine (actual). The Defendant also stipulated and agreed that the amount of the methamphetamine that she possessed was intended for distribution.

## Defendant's Post-Indictment and Post-Plea Criminal Conduct

After the grand jury indicted the Defendant, she appeared on May 17, 2023 before Magistrate Judge Beth Gesner and was released on pretrial supervision. ECF No. 6. Pursuant to the Order Setting Conditions of Release, among other things, the Defendant was required to "refrain from possessing a firearm, destructive device, or other dangerous weapons" and could not "violate any federal, state, or local law while on release." ECF No. 6 at 1-2. The Defendant signed the Order Setting Conditions of Release with the Court. ECF No. 6 at 4. In doing so, the defendant promised to obey all conditions of release. *Id.*

Nonetheless, as outlined in the government's Motion to Revoke Conditions of Release, the Defendant repeatedly committed crimes post-indictment and, even after pleading guilty. *See* ECF No. 67 (filed *ex parte*), attached to this Sentencing Memorandum as Exhibit A. Much of the evidence related to the Defendant's continued criminal activity emanated from an ongoing and separate criminal investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

*First*, despite being a prohibited person, ATF agents learned that the Defendant possessed and discharged a firearm, on June 12, 2024, while she was on pretrial release. *See id.* at ¶ 10-11. *Second*, after pleading guilty, ATF agents executed warrants on March 4, 2026 at the residence shared by the Defendant and her significant other. *See id.* at ¶ 12. From there, agents seized an

"American Tactical 5.56 caliber pistol, 357 rounds of various calibers of ammunition, fraudulent identification cards, credits cards in unknown persons names, and counterfeit currency." *Id.* Importantly, based on the Defendant's own statements during a recorded jail call with the father of her child, she admitted that she intentionally hid a firearm from law enforcement during the execution of the March 4, 2026 warrant. *See id.* at ¶ 18. **Third**, despite this admission on the jail call, the Defendant denied having knowledge of any firearms when agents directly asked her that day. *See id.* at ¶ 19. **Fourth**, it appears that the Defendant also made untruthful statements to her probation officer. When asked by her probation officer, the Defendant denied knowledge of the firearms in her and her spouse's residence. *See id.* at 29 (Notice of Apparent Violation and Request for Warrant).

In this way, the Defendant breached the plea that she entered on August 6, 2025. Pursuant to the plea agreement, the Defendant agreed that she would not "engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1," "will not violate any federal, state, or local law," and "will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers" between the date of her guilty plea and sentencing.  ECF No. 61, at ¶ 17. The Defendant also acknowledged that if she engaged in this conduct prior to sentencing and the Court found a violation by a preponderance of the evidence, then the United States Attorney's Office would be "free from its obligations under [the plea agreement]," "may make sentencing arguments and recommendations different from those set out in the plea agreement," and "will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant." *Id.* at ¶ 18. Lastly, the Defendant also acknowledged that she "may not withdraw [her] guilty plea . . . if the Court finds the Defendant breached the Agreement." *Id.* The government plans to call at least one witness and introduce evidence at sentencing to prove, by a preponderance of the evidence, the Defendant breached the plea.[2]

## Criminal History

According to the current Presentence Investigation Report ("PSR"), Defendant's criminal history score is eight, dictating his criminal history category as IV. PSR (ECF No. 64) ¶¶ 39. The government does not object to the PSR's criminal history analysis.

## Sentencing Guidelines Calculation

The PSR also notes that Defendant's Total Offense Level is 27. PSR ¶ 27. It reaches this conclusion after allocating a base offense level of 30 because the quantity of methamphetamine involved in the charged controlled buy was at least 50 grams but less than 150 grams of methamphetamine (actual).[3]  PSR ¶ 16. Then, the PSR reaches a 27 total offense level after

---

[2] The government presented many of those facts before Judge Coulson at the hearing on the government's Motion to Revoke Defendant's Release Conditions. After hearing oral argument and considering the facts presented, Judge Coulson detained the Defendant. *See* ECF No. 74-75.

[3] According to U.S.S.G. § 2D1.1, note B, methamphetamine (actual) refers to the "weight of the controlled substance, itself, contained in the mixture or substance." For example, a mixture

subtracting three points because the Defendant accepted responsibility, and timely notified authorities of his intention to plead guilty.  PSR ¶¶ 23-25.

Despite this calculation, the government will argue at sentencing that the Defendant breached the plea due to her post-indictment and post-plea conduct. If successful, the government will also argue that the Defendant failed to accept responsibility and her alleged timely notification of her intention to enter a plea is null and void. As a result, the Defendant's Total Offense Level would remain at 30. This would place Defendant's guidelines range between 135 to 168 months of incarceration.

## **Recommendation**

The government plans to recommend that a sentence of 135 months is sufficient, but not greater than necessary, to meet the requirements of 18 U.S.C. § 3553 in this case. The government, of course, looks forward to addressing this matter – including the application of the factors under 18 U.S.C. § 3553 – further at sentencing.

Sincerely,

Kelly O. Hayes
United States Attorney

_____/s/_____
Adeyemi Adenrele
Assistant United States Attorney

---

weighing 10 grams containing methamphetamine at 50% purity contains 5 grams of methamphetamine (actual). *See id.*